**In re Jack B. SOLERWITZ.**

Misc. No. 145.

United States Court of Appeals,
Federal Circuit.

June 17, 1988.

Order on Denial of Reconsideration
July 20, 1988.

Nathan Z. Dershowitz of Dershowitz & Eiger, P.C., New York City, and Alan M. Dershowitz, for Jack B. Solerwitz.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, DAVIS, SMITH, NIES, NEWMAN, BISSELL, ARCHER and MAYER, Circuit Judges.*

FRIEDMAN, Circuit Judge.

These are exceptions by Jack B. Solerwitz, a member of the bar of this court, to the findings and recommendation by Senior Judge Marion T. Bennett that Mr. Solerwitz be disciplined for engaging in conduct unbecoming a member of the bar of this court, in violation of Rule 46(b) of the Federal Rules of Appellate Procedure. Judge Bennett recommended that Mr. Solerwitz be suspended from practice before this court for two years, but that enforcement of the suspension be held in abeyance for two years, "pending his demonstration of rehabilitation during probation."

We agree with and adopt Judge Bennett's determination that Mr. Solerwitz engaged in conduct unbecoming a member of the bar of this court. We modify the proposed disciplinary action to a suspension for one year, but reject the recommendation that the suspension be held in abeyance. Our order of suspension will be effective ninety days from the date of this order.

I

This court instituted this proceeding by an *in banc* order directing Mr. Solerwitz to "show cause why he should not be suspended for two years from representing clients before this court." The proceeding resulted from Mr. Solerwitz's conduct in representing a large number of former air traffic controllers in their appeals to this court from decisions of the Merit Systems Protection Board (Board) upholding their removals because of their participation in the 1981 illegal air traffic controllers strike. After Mr. Solerwitz filed in this proceeding various motions that the court denied—including motions to disqualify all members of the court and to stay the proceedings—Senior Judge Bennett was appointed to conduct the hearing that Mr. Solerwitz requested. Following the hearing, Senior Judge Bennett filed a lengthy opinion and made 52 detailed findings of fact, on the basis of which he made his recommendation described above.

A. The background facts, as set forth in Judge Bennett's findings and opinion, are uncontradicted. The government dismissed more than 11,000 air traffic controllers for their participation in the illegal strike. More than 10,000 of them appealed to the Board. Following the Board's decisions, approximately 4,600 petitions for review were filed in this court. Many of these petitions covered cases that the Board had consolidated and many which the court consolidated.

Because of the extraordinarily large number of these cases, the court, in consultation with counsel who elected to participate, designated twelve of them as "lead cases," which it believed to present most of the legal issues that were common to the air traffic controllers' appeals. Those twelve cases were scheduled for expeditious briefing and oral argument. On February 24, 1983, all other pending air traffic controller cases were suspended.

Mr. Solerwitz, who initially represented between 800 and 1,000 air traffic controllers before the Board, filed appeals with this court for 736 controllers. As a result of the consolidation of appeals, Mr. Solerwitz had pending before this court 154 petitions for review. He was sole counsel in one of the twelve lead cases.

On May 18, 1984, the court decided the twelve lead cases. *Schapansky v. Department of Transp.,* and related cases, 735 F.2d 477–549, *cert. denied,* 469 U.S. 1018,

---

* Because of illness, Circuit Judge Davis took no part in the decision of this case. Circuit Judge Michel took no part in the consideration or decision of this case.

105 S.Ct. 432, 83 L.Ed.2d 358 (1984). On the same date, the court sent a notice to the attorneys and the petitioners in the other air traffic controller cases that it would notify them upon the final disposition of the lead cases, that within 30 days of the notification they must give written notice to the court if they wished to continue to prosecute their appeals, and that failure so to notify the court would result in dismissal of the appeal. "The notice to counsel and petitioners included, among other matters, copies of the court's opinions in the lead cases and directed attention to the impropriety of maintaining frivolous appeals, citing published cases of the court on that issue." Finding 4.

Finding 5 and a portion of finding 6 stated:

On December 10, 1984, in conformity with the May 18, 1984 notice, counsel and petitioners in all ATC cases were notified that the Supreme Court had denied certiorari in all lead cases in which it had been sought and that mandates had been issued in those cases from this court to the MSPB. This notice also advised that the suspension entered on February 24, 1983, would remain in effect to and including January 10, 1985. Before the latter date, pending petitions for review were required to be withdrawn or new ones filed. Absent such action the petitions would be dismissed. A renewed petition was required to contain "a statement of the issues relied on and not decided in any of the 'Lead Cases.'" The notice also indicated where the lead cases were published and again emphasized the impropriety of frivolous appeals, repeating the precedents cited in the May 18, 1984 notice.

... On July 12, July 31, and August 30, 1985, the court by memorandum requested all ATC counsel to review the propriety of maintaining appeals in light of the need to avoid frivolity and the accompanying abuse of the judicial process. With each of the five notices in 1984–85 the court furnished counsel with a set of published lead cases or citations thereto.

B. The order to show cause made the following allegations:

Mr. Solerwitz was thus repeatedly and expressly warned by this court against filing and maintaining frivolous appeals in air traffic controller cases that presented legal issues and fact patterns indistinguishable from those presented and decided in the precedents represented by the Lead Cases. Ignoring those warnings, Mr. Solerwitz, who was sole counsel in one Lead Case, maintained 11 frivolous appeals pending on May 18, 1984 and filed and maintained another 131 separate frivolous appeals in air traffic controller cases. In his briefs in those appeals, 107 of which were virtually identical, Mr. Solerwitz disregarded Federal Rules of Appellate Procedure and this court's rules, failed to file appendices, provided no citations to the record, ignored authorities cited by the government, advanced numerous arguments on issues not on appeal, and repeatedly raised contentions not raised before the Merit Systems Protection Board. Mr. Solerwitz' briefs were devoid of any showing on which the decision appealed from could even possibly be reversed, devoid of any basis on which the precedents of this court could be distinguished in law or fact, and devoid of any effort to make such distinctions, in total disregard of this court's written instructions of December 10, 1984.

. . . .

Mr. Solerwitz' conduct in filing and maintaining frivolous appeals having no colorable basis in fact or law has wasted the time and limited resources of this court, has denied availability of the court's resources to deserving litigants, and has constituted flagrant and totally inexcusable abuse of the judicial process. Mr. Solerwitz' conduct has been "unbecoming a member of the bar of the court", Fed.R.App.P. 46(b).

The court decided approximately 140 cases in which Mr. Solerwitz was counsel, each in a separate opinion. The court determined that the vast majority of those appeals were frivolous and imposed upon Mr. Solerwitz total sanctions of $78,300 for filing and maintaining frivolous appeals.

In *Des Vignes v. Department of Transportation*, 791 F.2d 142 (Fed.Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986), one of the cases in which a penalty ($1,000 in that case) was imposed upon Mr. Solerwitz for filing a frivolous appeal, the court described in detail the ways in which Mr. Solerwitz had engaged in "Abuse of the Judicial Process." *Id.* at 145. The court there stated:

Except for a paragraph or two relating to individual air controllers, 107 of those

briefs are virtually identical to that filed in this case. That they are copies is indicated by the presence of the same typographical errors in each, and by the failure to distinguish between appeals involving one petitioner from those involving multiple petitioners. Each contains the same type of patently frivolous constitutional arguments, rejected contentions, and unsupported assertions of fact discussed above. Each disserves the court in violating the rule requiring citations to the record. The court was required to check the record and was required to read, and has read, all 131 sets of briefs, in an effort to insure against the possibility that a meritorious appeal might otherwise be overlooked....

Respondent prepared briefs in response to each of counsel's 131 virtually identical briefs. Counsel's failure to refer to the record forced Respondent to do the work incumbent upon counsel. Counsel's failure to supply an appendix in some cases forced Respondent to do so in those cases. Respondent cited the frivolous, rejected, and unsupported contentions discussed above. Respondent also cited counsel's frequent, repeated, and brazen violations of this court's rules. Mr. Solerwitz' reply briefs simply ignored those citations, merely *stating* that the earlier cases were distinguishable (but citing no distinguishing factors), ignored Respondent's charge that he had failed to cite to the record, and stated that the appeal was filed to give Des Vignes access to the court. Faced with clear and insurmountable indication that all 131 appeals were frivolous, Mr. Solerwitz has continued to maintain this and the other 130 appeals.

*Id.* at 145–46 (emphasis in original) (footnotes omitted).

C. At the hearing, Mr. Solerwitz, represented by counsel, presented seven witnesses. Four of them testified with respect to the facts. The other three, experts in legal ethics, gave and explained their opinions on the propriety of Mr. Solerwitz's conduct. Mr. Solerwitz did not testify, but relied upon an affidavit he previously had submitted in support of his motion, noted above, to disqualify all of the judges of this court, which he requested the court to consider as his answer to the Order to Show Cause if the court denied his motion.

One of the four fact witnesses was Mrs. Solerwitz, Mr. Solerwitz's wife and law partner, who "was active in handling claims of air controllers represented by her firm." Finding 21. She described in detail the work involved in handling the cases and the procedural and other problems involved, characterized the court's requirement of filing "hundreds of appendices as 'a nightmare' and 'impossible' within such a limited time as allowed by the court," finding 25, and stated that it was "the view of the firm, and all of its clients who appealed, that it was important to get a final individual judgment in each case to preserve each client's right to apply for certiorari to the Supreme Court if relief was not otherwise granted. Further, according to Mrs. Solerwitz, some clients expressed hope for a congressional political solution to their claims for restoration to duty if no judicial remedy was forthcoming." Finding 32.

The three other fact witnesses were former air traffic controllers whom Mr. Solerwitz represented before the Board and the court. They testified that they had insisted that Mr. Solerwitz proceed with his or her appeal to the court. Findings 33, 35, and 37. The court imposed sanctions upon Mr. Solerwitz in each of those cases, which it found frivolous. The witnesses testified that Mr. Solerwitz's standard fee for handling these cases was $750 for Board proceedings and $2,500 additional for the court proceedings, but only one of them paid the full fee. Counsel for Mr. Solerwitz "made an offer of proof that if the other 14 former ATC clients identified as potential witnesses in the pretrial response were called, their testimony would correspond to that of" those three former controllers. Finding 19.

The three expert witnesses, all of whom Judge Bennett found to be "experts in the field of legal ethics and professional responsibility" (finding 20), were Professor Monroe H. Freedman of Hofstra University Law School, Professor William E. Hellerstein of Brooklyn Law School, and Harvey A. Silverglate, a practicing lawyer in Boston, Massachusetts. The three experts were all of the opinion that Mr. Solerwitz's conduct in the air traffic controller cases was proper and did not involve professional impropriety. Judge Bennett summarized their testimony in detail in findings 39 through 51.

Professor Freedman stated that "as long as counsel in good faith believes that his case is not frivolous, that it is his duty to

proceed with it notwithstanding any instructions to the contrary from a court" and that "the court is required to bend over backwards to defer to counsel's judgment with regard to what is filed and what is argued...." As Judge Bennett found, Professor Freedman "regards as frivolous only a paper that is fallacious on its face as distinguished from a sham pleading in which the argument is plausible but the lawyer knows or should know that the underlying facts are not there to support it." Finding 40. Judge Bennett accurately summarized Professor Freedman's view in the following statement in finding 41: "Had Professor Freedman been consulted by Mr. Solerwitz on whether to go forward with appeals in view of the decisions in the lead cases and the court's warnings about frivolous appeals, he would have advised that if the clients wished to proceed it was Mr. Solerwitz's ethical duty as a lawyer to do so and that this would especially be so if the appeals could be distinguished from the lead cases."

Professor Hellerstein's opinion was that "a lawyer has an obligation to persist in making and remaking the same argument to an intermediate court at least until the Supreme Court has foreclosed that court on the merits[.]" Professor Hellerstein testified that if Mr. Solerwitz had consulted him in 1984 and told him "of the warnings that he had received against filing frivolous appeals" and if Mrs. Solerwitz had told him about the problems facing her firm in handling the cases and about the discharged air traffic controllers' insistence on going ahead with the appeals, "I would have told him to go ahead and to seek if possible either through motions, some accommodation with respect to the rule or find someone that was available to explain what was on the court's minds." Judge Bennett stated in finding 45 that "Professor Hellerstein testified that in his entire practice he never once turned down a client's request to bring an appeal because he believed it was frivolous, if he felt there was anything that could be argued.... Professor Hellerstein distinguished as unacceptable a sham argument which he defined as one 'that could not be based legitimately on the record in the case.' He did not regard the appeals filed by Mr. Solerwitz to be shams."

Mr. Silverglate testified that he "agree[d] with Professor Freedman's definition on frivolity" and did "not consider the legal arguments made [by Mr. Soler-witz] to be frivolous." Judge Bennett found that "[i]n the opinion of Mr. Silverglate, Mr. Solerwitz could not withdraw from the cases just on account of adverse decisions in the lead cases and that he had an ethical obligation to persist in the appeals given the insistence of the clients and the obligation to get decisions, although expected to be adverse, so that the right to seek certiorari would be protected" (finding 51).

D. Judge Bennett rendered a comprehensive and scholarly opinion. Drawing upon *In re Bithoney*, 486 F.2d 319 (1st Cir.1973), discussed below, in which the court of appeals upheld a lawyer's suspension from practice for filing a number of successive frivolous applications, Judge Bennett stated that Mr. Solerwitz's conduct was similar to that involved in *Bithoney*. Judge Bennett pointed out that "[t]he facts of the present proceeding involve the continued filing and maintenance of multiple frivolous appeals" and stated that "the central focus here is whether the entire course of conduct by Mr. Solerwitz, taken as a whole, amounts to conduct unbecoming a member of the bar of this court which warrants further discipline in addition to the sanctions previously imposed."

Judge Bennett stated that Mr. Solerwitz, "through the testimony of his expert witnesses, makes almost identical arguments [to those in *Bithoney*] in the present proceeding." Judge Bennett concluded that:

The views of the expert witnesses, while based in part on established tenets of the legal profession, do not fully outline the duties of a lawyer nor do they provide a complete picture of the specific issues before the court in this proceeding. An attorney's obligations to provide zealous advocacy on behalf of his client are not absolute and uncompromising, but must be viewed in light of his additional obligations as an officer of the court to promote the administration of justice and to comply with the court's rules, notices, and orders. Additionally, as with his obligations to his client, the attorney's obligations to the court are ongoing at every stage of the litigation and the attorney must continually reevaluate the positions advanced in light of both the development of the litigation itself and of the relevant case law affecting the litigation. [Footnote omitted.]

Judge Bennett noted the court's criticism of Mr. Solerwitz's briefs in *Des Vignes, supra,* and pointed out that

> his briefs were found to exhibit general and striking failures to cite or distinguish contrary authority, to distinguish the facts of the appeal from prior cases, to respond to contrary arguments of the respondent, or to even refer to the record. These conclusions are confirmed by an independent review of the Solerwitz briefs conducted as part of this proceeding which indicates, by clear and convincing evidence, that his attempts to comply with the court's notices, rules and instructions were dramatically deficient in each of the respects noticed in the order to show cause. All of these failures are even more striking when viewed in the face of numerous notices of the court cautioning against such behavior by counsel. [Citation omitted.]

> Thus, the simple fact remains, as born out by the opinions of this court in each individual appeal, that the briefs filed by Mr. Solerwitz fell short of meeting an objective standard of nonfrivolity.

Judge Bennett rejected as "both inaccurate and unsympathetic" Mr. Solerwitz's "claim that the chaos that apparently characterized the Solerwitz law office during the period in question was solely due to the court's inaction and excessive delay in responding to his motions." See the portions of Judge Bennett's opinion quoted at the end of part IIA, below.

Judge Bennett concluded:
> On the basis of the findings, this opinion, and cited authority, it is therefore concluded that clear and convincing evidence supports the determination that Mr. Jack B. Solerwitz's continued course of conduct in filing and maintaining multiple frivolous appeals in the face of this court's orders, notices, instructions, rules, precedents, and previous sanctions constitutes conduct unbecoming a member of the bar of the United States Court of Appeals for the Federal Circuit. It is further concluded that none of his offered justifications or defenses excuse that conduct. Therefore, it is concluded that Mr. Solerwitz has not rebutted the order to show cause.

Mr. Solerwitz filed exceptions to Judge Bennett's findings and opinion and a brief, and we heard oral argument by his counsel.

## II

A. Mr. Solerwitz's principal challenge to Judge Bennett's recommended decision is that Judge Bennett failed to give proper weight to the conclusions of the three expert witnesses on legal ethics that the appeals Mr. Solerwitz pursued were not frivolous, and that Mr. Solerwitz was fully warranted, if not required, to proceed with the appeals in view of his clients' insistence that he do so. He urges that the court "should not be the sole arbiter" whether an appeal is frivolous, but "must use as a standard the test that a brief is frivolous only where no judge or responsible expert in the field would venture the opinion that the brief is not frivolous. Here it is not only Mr. Solerwitz who believes these briefs are not frivolous but also three experts who are frequently and respectfully called upon to made [sic] such judgments."

Mr. Solerwitz states that "[t]he quintessential issue posed by this case is thus whether, when the Court and ethics experts fundamentally disagree as to whether an attorney's actions on behalf of his clients constitutes 'conduct unbecoming a member of the bar,' suspension, in addition to financial sanctions, is appropriate.... He further maintains that, in light of the disagreement between this Court and the ethical experts, to impose the sanction of suspension in a case where reasonable and knowledgeable people disagree on whether his actions were unbecoming a member of the bar will have a chilling effect on creative lawyering, will stifle reconsideration of precedent and will be generally detrimental to our system of justice."

■ We have reviewed the testimony of the three experts and their conclusions regarding the propriety of Mr. Solerwitz's conduct. We agree with Judge Bennett's conclusion, however, that despite the opinion of those experts, Mr. Solerwitz engaged in conduct unbecoming a member of the bar of this court in his handling of the air traffic controller appeals.

■ Contrary to Mr. Solerwitz's contention, it is this court and not Mr. Solerwitz's experts that must determine whether Mr. Solerwitz's conduct was improper. As a member of the bar of this court, Mr. Solerwitz, in Judge Bennett's words, was required to "promote the administration of justice and to comply with the court's rules, notices and orders." On five separate occasions, the court had warned all counsel in

the air traffic controller cases against further pursuit of frivolous appeals in cases that could not be meaningfully distinguished from the lead cases. Despite these warnings, Mr. Solerwitz continued to press more than 100 appeals that were frivolous. Mr. Solerwitz cannot escape responsibility for his actions by the assertions that his clients insisted that he pursue their appeals and that he believed he could draw adequate factual distinctions between his cases and the lead cases.

The expert witnesses' conclusions were stated in general terms and did not address the specific grounds upon which, in previously imposing the sanctions upon Mr. Solerwitz, this court had concluded that Mr. Solerwitz's appeals were frivolous. It bears repeating that Mr. Solerwitz filed 107 briefs that were virtually identical and that merely repeated the same arguments that this court already had rejected in the lead cases. The purported short factual distinctions he sought to draw between the situations of the former controllers in the 131 cases and those in the lead cases were wholly unconvincing and did not provide any meaningful basis for distinguishing the lead cases.

Mr. Solerwitz did not inform the court that the legal discussions in all of those briefs were identical, including, as the court noted in *Des Vignes*, "the same typographical errors in each." 791 F.2d at 146. The result, as there pointed out, was that this court "was required to check the record and was required to read, and has read, all 131 sets of briefs, in an effort to insure against the possibility that a meritorious appeal might otherwise be overlooked." *Id.* at 146.

This is not a situation in which a lawyer makes an argument that a court previously had rejected, in an attempt to persuade the court that its previous decision was erroneous and should be reconsidered and overruled. As the expert witnesses indicated, that is an accepted, necessary, and desirable part of advocacy. Here, however, the court (by an augmented panel of five judges) had decided the twelve lead cases in an endeavor to determine the controlling principles that would govern the bulk of the air traffic controller appeals. The court expressly warned counsel who pursued the remaining appeals that they must distinguish their cases from the lead cases and that an appeal that failed to do so would be deemed frivolous. In response to

this warning, other lawyers withdrew a large number of air traffic controller appeals.

Mr. Solerwitz's briefs, however, did not attempt to convince the court that the lead cases, decided only a short time earlier, had been incorrectly decided and should be overruled. Instead, he merely repeated the same basic arguments that the court had rejected in the lead cases.

Mr. Solerwitz complains that Judge Bennett did not include among his findings of fact any finding that the appeals were frivolous. Perhaps Judge Bennett concluded that that determination was not properly included among the findings of fact. Judge Bennett's opinion, however, leaves no doubt that he determined that the appeals were frivolous. Judge Bennett stated that "[t]he facts of the present proceeding involve the continued filing and maintenance of multiple frivolous appeals," that Mr. Solerwitz had "abuse[d] ... the legal process by frivolous filings," that Mr. Solerwitz's briefs "fell short of meeting an objective standard of nonfrivolity," and his opinion referred to Mr. Solerwitz's "continued course of conduct in filing and maintaining multiple frivolous appeals."

Like Judge Bennett, we conclude that *In re Bithoney*, 486 F.2d 319 (1st Cir.1973), supports our determination here. Although, as Mr. Solerwitz points out, the facts in that case are different from those here, the rationale of that decision is equally applicable here.

In *Bithoney*, an attorney filed within nine months nine petitions to review deportation orders. The effect of filing was to stay deportation. In all nine cases the court dismissed the petitions, holding that they were frivolous, not diligently pursued, or both. In the first decision (which covered three cases), the court stated: "This court does not propose to have appeals taken simply for the purpose of staying an enforcement of immigration orders, and when prosecution is not diligently pursued, the court presumes that this was the purpose." *Id.* at 320–21.

The court held that the attorney's "behavior in filing the immigration appeals was improper and worthy of disciplinary action." *Id.* at 322. It ruled that "the filing of nine petitions for review in immigration cases, some of which were not diligently pursued and none of which raised any substantial issue on review, which peti-

tions caused automatic stays in deportation despite their lack of merit, and six of which petitions were filed after specific warning concerning the impropriety of such conduct, constitutes behavior 'unbecoming a member of the bar of the court'." *Id.* at 325.

Although the present case does not involve an attorney's failure to prosecute cases, which led the court in *Bithoney* to conclude that petitions to review had been filed solely to obtain an automatic stay of deportation, there are strong similarities between the two cases. In both cases the court concluded that the appeals were frivolous and in both cases the attorneys insisted on filing further appeals after the court had warned them not to do so. Indeed, in some respects Mr. Solerwitz's conduct was more egregious than Mr. Bithoney's. Mr. Solerwitz filed not nine but 131 frivolous appeals. In more than 100 of those he filed substantially identical briefs without informing the court of that fact, which required the court (and government counsel) unnecessarily to read more than 4,000 pages of legal argument.

■ Mr. Solerwitz further argues, with the support of the expert witnesses, that his failure to comply with the court's rules and orders governing the filing and form of briefs and the filing of appendices was not his responsibility but resulted from the inability of his small law firm to comply with those requirements within the time deadlines. Judge Bennett correctly rejected this contention. He pointed out that

[i]t is difficult to fathom how a 3-person practice, even in ideal circumstances, could adequately ... handle 154 court appeals for 736 individuals, given the relatively short time frame in which all of the actions arose. If the firm's personnel turnover and shortages were so severe as not to allow compliance with the briefing and record filing requirements of the court, Mr. Solerwitz should have referred some of his clients to other firms or taken alternative means to insure adequate representation for them. *See [In re] Pritzker*, 762 F.2d [532] at 533 [7th Cir.1985] (proper course is to move to withdraw, not ignore court orders and seek indulgence in disciplinary proceeding); *Bithoney*, 486 F.2d at 323 & n. 3 (illness not an excuse and merely informing clients of difficulty is not sufficient if attorney unable to fulfill obligations to court and client); *McMorris v.*

*State Bar*, 29 Cal.3d 96, 623 P.2d 781, 171 Cal.Rptr. 829 (1981) (taking on too much work is not mitigating factor since condition is within the attorney's control).

■ B. Mr. Solerwitz also assails the proceedings before Judge Bennett as "procedurally defective." He points out that Rule 46(c) of the Federal Rules of Appellate Procedure provides that a court may take disciplinary action against an attorney only after a hearing (if one is requested, as Mr. Solerwitz did), and charges that the hearing before Judge Bennett was "a sham." Although Mr. Solerwitz's grounds for objection to the procedure are unclear, apparently they are that there was no adversary hearing because no one appeared for the court and that "Judge Bennett failed to make any of the factual findings for which the hearing was ostensibly held."

To the extent that the latter argument is that Judge Bennett failed to make formal findings that the appeals were frivolous, we have already answered it. As indicated, the basic facts regarding what Mr. Solerwitz did are undisputed. The issue is whether Mr. Solerwitz's action constituted conduct unbecoming a member of our bar. Judge Bennett's detailed findings and lengthy opinion fully explained his reasons for answering that question affirmatively.

Mr. Solerwitz's objection that the proceedings were not truly adversary because no one represented the court is difficult to understand. Mr. Solerwitz cannot show and has not shown that he was prejudiced because no attorney appeared on behalf of the court to cross-examine his witnesses and present argument against him. The order to show cause fully informed Mr. Solerwitz what the charges against him were and what he would have to refute. He introduced evidence at the hearing that attempted to justify his conduct. Judge Bennett, however, found those explanations and the expert witnesses' views on the propriety of Mr. Solerwitz's conduct unpersuasive—a conclusion with which we agree.

The procedure followed in this case fully comported with Rule 46(c), which provides:

A court of appeals may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecom-

ing a member of the bar or for failure to comply with these rules or any rule of the court.

As that provision required, Mr. Solerwitz was given reasonable notice of the reasons why the court believed he had engaged in conduct unbecoming a member of this bar and the opportunity to show cause "to the contrary" at a hearing. Mr. Solerwitz's objections to the procedure followed in this case appears to be nothing more than his dissatisfaction that Judge Bennett did not accept the evidence which in his view established that his conduct in the air traffic controller appeals was proper.

### III

As noted, Judge Bennett recommended that Mr. Solerwitz be suspended from practice before this court for two years but that "enforcement of the suspension of Mr. Solerwitz be held in abeyance for 2 years, pending his demonstration of rehabilitation during probation."

■ A. Although the order to show cause proposed a two-year suspension, we have concluded that a one-year suspension from practice constitutes "appropriate disciplinary action" under Rule 46(c). Mr. Solerwitz has been subjected to substantial monetary sanctions for the numerous frivolous appeals he has taken. Moreover, he has cooperated fully with the court in these proceedings. Although we agree with Judge Bennett that, because Mr. Solerwitz has engaged in conduct unbecoming a member of the bar of this court, disciplinary action in addition to those monetary sanctions is necessary, we think a less severe sanction than we originally proposed is appropriate.

■ B. We conclude, however, that the one-year suspension we are ordering should not be stayed. The reasons that have led us to conclude that such action against Mr. Solerwitz (in addition to the monetary sanctions previously assessed against him) is necessary and appropriate, also require that the discipline be effective and subject Mr. Solerwitz to a tangible penalty. To impose a suspension and at the same time to stay its effectiveness for its duration as a practical matter would amount to no suspension at all and therefore to no meaningful discipline.

We recognize that this is an unusual case. As Judge Bennett noted, this is the first time that we have had to exercise our disciplinary authority under Rule 46(c) against a member of the bar of this court. Mr. Solerwitz may wish to seek Supreme Court review of our decision. To give him full opportunity to do so, our order suspending him from practice will become effective ninety days from the date of this decision. *Cf.* 28 U.S.C. § 2101(c) (1982).

### ORDER

Jack B. Solerwitz is suspended from practice before this court for one year for conduct unbecoming a member of the bar of this court. This suspension shall become effective ninety days from the date of this order. If within that period Mr. Solerwitz files with the Supreme Court of the United States a petition for a writ of certiorari to review this decision, the effectiveness of this order of suspension shall be further stayed pending the Supreme Court's disposition of the petition.

### ORDER DENYING RECONSIDERATION

Before MARKEY, *Chief Judge*, FRIEDMAN, RICH, SMITH, NIES, NEWMAN, BISSELL, ARCHER, and MAYER, *Circuit Judges*.

FRIEDMAN, *Circuit Judge*.

■ Jack B. Solerwitz has petitioned for reconsideration of our order dated June 17, 1988, that suspended Mr. Solerwitz from practice before this court for one year for having engaged in conduct unbecoming a member of the bar of this court. Mr. Solerwitz contends that the court improperly rejected the recommendation of Senior Judge Bennett, to whom the case was assigned for hearing and to make findings and recommendations, that Mr. Solerwitz be suspended for two years but that the suspension itself be suspended and that Mr. Solerwitz be placed on probation for that period.

Mr. Solerwitz refers to the principle that it would be "wholly improper" for an appellate tribunal to "impose a harsher sentence than the one imposed by the trial court," and alleges that it also is "wholly improper for this Court to increase his punishment, at least without itself holding a hearing on that question." Mr. Solerwitz complains that "under the procedures established by this Court for the conduct of these proceed-

ings, he has never had an opportunity to address the Court on the subject of an appropriate penalty."

The order to show cause, which initiated these proceedings, informed Mr. Solerwitz that he faced a possible suspension from practice before this court for two years. Judge Bennett's recommendation was that Mr. Solerwitz be suspended for that period. We reduced that recommendation suspension to one year. The fact that we disagreed with Judge Bennett's further recommendation that the suspension itself be suspended cannot properly be viewed as an "increase" in Mr. Solerwitz's punishment. A suspension from practice for two years necessarily is a greater sanction than a suspension for one year.

Mr. Solerwitz's purported analogy between what happened in this case and an impermissible increase by an appellate court of a trial court's sentence fails because the two situations are not comparable. Judge Bennett was not functioning as an independent trial court, but as a master acting for this court to conduct a hearing and make proposed findings and recommendations. His decision was only a recommendation, which we were free to change or modify as we deemed appropriate.

In his exceptions to Judge Bennett's recommended findings and decision, Mr. Solerwitz could have challenged the sanction, but failed to do so. He did not argue to us that a lesser sanction than Judge Bennett proposed would be appropriate, or that even if we upheld Judge Bennett's conclusion that Mr. Solerwitz had engaged in conduct unbecoming a member of our bar, any suspension should be stayed, as Judge Bennett had proposed.

As Mr. Solerwitz must have known, it was this court and not Judge Bennett that would determine the appropriate sanction. Not having addressed the sanction Judge Bennett proposed, Mr. Solerwitz cannot now be heard to complain because we reduced the suspension from two years to one, but declined to stay the effectiveness of the suspension.

We have considered Mr. Solerwitz's arguments that the sanction proposed by Judge Bennett would be more appropriate and adequate. Those arguments, however, do not induce us to change our decision.

The petition for reconsideration is denied.