923 P.2d 395

AIG HAWAI'I INSURANCE COMPANY, INC., Plaintiff–Appellant,

v.

Billy BATEMAN, Defendant/Cross– Claim Defendant–Appellee,

and

Pat Vicente, Defendant/Cross– Claimant–Appellee,

and

Pat VICENTE, Defendant/Third– Party Plaintiff–Appellee,

v.

Flor CORPUZ and Aida Corpuz, Third–Party Defendants.

No. 19616.

Supreme Court of Hawai'i.

Sept. 11, 1996.

As Amended on Partial Grant of Reconsideration Sept. 27, 1996.

Carleton B. Reid, Carolyn A. Wilson and John T. Hassler of Reid, Richards & Miyagi, on the briefs, Honolulu, for Plaintiff–Appellant AIG Hawai'i Insurance Company, Inc.

Kevin S. W. Chee and Keith T. Kato of Chee & Markham, on the briefs, Honolulu, for Defendant-Third–Party Plaintiff-Appellee Pat Vicente.

James Krueger, Peter T. Cahill and John M. O'Neill of Krueger & Cahill, on the briefs, Wailuku, for Defendant/Third–Party Plaintiff-Appellee Pat Vicente.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

We have previously reviewed this action for declaratory relief. *See AIG Hawai'i Insurance Co., Inc. v. Vicente,* 78 Hawai'i 249, 891 P.2d 1041 (1995) [hereinafter, *Vicente I* ]; *AIG Hawai'i Insurance Co, Inc. v. Vicente,* No. 19274 (Order of Dismissal filed December 13, 1995) [hereinafter, *Vicente II* ]. In the present appeal, plaintiff-appellant AIG Hawai'i Insurance Co., Inc. (AIG) appeals from the judgment of the Second Circuit Court filed on January 25, 1996. AIG argues on appeal that the circuit court erred in denying its motion to rescind a settlement agreement it had entered into with defendant/cross-claimant-appellee Pat Vicente relating to a tort action brought by Vicente against defendant/cross-claim defendant-appellee Billy Bateman for injuries Vicente suffered in a motor vehicle accident with a car driven by Bateman, owned by third-party defendant Flor Corpuz, and insured by AIG [hereinafter, the settlement agreement]. AIG asserts that the settlement agreement was premised on a mutual mistake of law, *i.e.,* that AIG owed a duty to defend and indemnify Bateman, and is therefore voidable.

For the reasons discussed below, we affirm the judgment of the circuit court. Moreover, because a review of the records on appeal in *Vicente I, Vicente II,* and the present case indicates that: (1) the parties to *Vicente I* had settled the underlying tort action ten days after the filing of the notice of appeal in *Vicente I,* but failed to notify us of the settlement; (2) the settlement was not apparent from the record on appeal in *Vicente I;* and (3) we were misled into deciding a case that was actually moot, counsel for the parties, by failing to disclose the material fact of the settlement to this court, and, by bringing and defending an appeal on a moot question, appear to have engaged in conduct that does not comport with the Hawai'i Rules of Professional Conduct (HRPC) (1995). Accordingly, pursuant to HRPC Rule 8.3 (1993)[1] and Canon 3D(2) of the Revised Code of

Judicial Conduct (1992)[2], we refer this matter to the Office of Disciplinary Counsel (ODC) for its review and appropriate action. We direct the Clerk of the Supreme Court to transmit a certified copy of this opinion to the ODC. We further direct all clerks of the several courts of this state to make available the records of the aforementioned cases for the ODC's review and to provide certified copies, at no cost, of any documents requested by the ODC in connection with its investigation of this matter.

## I. *BACKGROUND*

The factual and procedural background in the present case has been recited previously in *Vicente I*. We therefore briefly recount the pertinent facts and proceedings focusing on facts and proceedings subsequent to—or unknown by the court at the time of—*Vicente I*.

On November 1, 1989, vehicles being driven by Bateman and Vicente were involved in an accident. The vehicle driven by Bateman was owned by Corpuz, but was principally used by Corpuz's daughter, third-party defendant Aida Corpuz (Aida). Aida had permitted Bateman, her boyfriend, to drive the car, despite the fact that Corpuz had explicitly instructed her not to allow anyone else to drive the car. Corpuz did not know of Bateman's existence, let alone that Bateman was driving Corpuz's car.

AIG, the insurer of Corpuz's vehicle, filed Civil No. 89–0621, a declaratory judgment action against Vicente and Bateman, seeking a judicial determination that it had no duty to defend and indemnify Bateman with respect to Vicente's bodily injury claims against him. AIG maintained that Bateman was not a "covered person" under the policy issued to Corpuz because Bateman had used the car without Corpuz's express or implied permission. The circuit court entered two summary judgment orders against AIG, finding that Bateman was a permissive user of the insured vehicle.

In April 1992, following entry of the second summary judgment order, AIG and Vicente agreed to settle Vicente's bodily injury claims against Bateman. In a settlement letter dated April 23, 1992 from AIG's attorney, Carolyn A. Wilson, of the Reid, Richards & Miyagi law firm, to Vicente's attorney, Peter Cahill, Wilson wrote:

> Re: AIG Hawaii v. Bateman
>
>   Civil No. 89–0621(1)
>
> . . . .
>
> It has been decided in this matter that AIG will pay the Bodily Injury Liability limits of $35,000[[3]] from Mr. Flor Corpuz's policy to Ms. Vicente. AIG has also decided to take this matter up on Appeal to decide part of the permissive use issue here in the State of Hawaii. I will continue to keep you on the Certificate of Service so that you will be informed of all aspects of this case as it does go forward.

By letter dated May 11, 1992, Wilson forwarded to Cahill: (1) a Joint Tortfeasor Release and Indemnity Agreement, drafted by AIG's attorneys, for Vicente's signature; and (2) AIG's check no. 714621 in the amount $35,000, dated April 23, 1992, payable to Vicente and Cahill. The release agreement essentially indicated that the $35,000 represented payment for general damages only; the face of AIG's check stated "in payment of claim or account as follows: full and final bodily injury."

The release agreement was executed by Vicente on May 14, 1992. The release also provided, *inter alia*, that: (1) in consideration of $35,000 paid to Vicente by Bateman, Corpuz, Aida, and AIG, Vicente released and forever discharged those parties from any and all claims arising from the November 1, 1989 automobile accident; and (2) the pay-

---

**2.** Revised Code of Judicial Conduct Canon 3D(2) provides that:

> A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the [HRPC] should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the [HRPC] that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority.

**3.** The record indicates that the limits of bodily injury liability coverage under Corpuz's policy was actually $100,000.00 per person/$300,000.00 per occurrence.

ment compromised and settled all disputes between the parties for the purpose of avoiding further litigation and expense. It appears from the record that the fact of the settlement was made known to Vicente's insurer, Hawai'i Insurance & Guaranty Company (HIG).

On May 4, 1992, while the settlement document was being drafted, Wilson and co-counsel Carleton B. Reid filed a notice of appeal on behalf of AIG in No. 16114, appealing the circuit court's summary judgment orders entered in favor of Vicente in Civil No. 89-0621. The settlement document executed by Vicente ten days later, on May 14, 1992, was not filed by the parties, and, thus, no evidence of the settlement appeared in the record of Civil No. 89-0621 that was transmitted to the supreme court on June 15, 1992.

On July 2, 1992, Reid and Wilson filed an opening brief on behalf of AIG in *Vicente I.* Asserting that "[t]his is a case of first impression in this jurisdiction," the AIG attorneys contended that Bateman was not a "covered person" under the insurance contract because he was a "second permittee" whose use of the insured vehicle exceeded the scope of permission declared by the named insured.

HIG provided Vicente's defense in AIG's appeal. On August 10, 1992, attorneys Kevin Chee and Keith Kato, of the law firm of Chee & Markham, which was retained by HIG to represent Vicente, filed an answering brief on behalf of Vicente in *Vicente I.* Reid and Wilson thereafter filed a reply brief on August 20, 1992.

In their briefs, counsel for the parties never disclosed the May 1992 settlement between AIG and Vicente. Vicente's attorneys defended AIG's appeal on the merits. They did not raise the mootness issue in their answering brief nor did they move to dismiss the appeal on such ground.

Because *Vicente I* raised an important question of first impression, the case was assigned to the supreme court on September 21, 1992. While the case was pending decision, HIG attorney Gregory K. Markham,

also of the Chee & Markham firm, on behalf of Vicente, moved this court to stay AIG's appeal pursuant to a December 30, 1992 circuit court rehabilitation order staying all proceedings involving HIG for ninety days. We granted the stay on March 18, 1993. Thereafter, AIG attorney John T. Hassler, also of the firm of Reid, Richards & Miyagi, moved this court to lift the rehabilitation stay and to reinstate AIG's appeal. We denied the motion as unnecessary because the stay had automatically expired on March 24, 1993.

In the moving papers concerning the stay, counsel for the parties did not disclose the May 1992 settlement.

On March 30, 1995, without knowledge of the settlement, we filed our opinion in *Vicente I,* which included a lengthy dissenting opinion. The majority opinion, which discussed in depth the principles and scope of implied permission, held that Bateman was not a permissive user of the insured vehicle and was therefore not a "covered person" under the insurance contract. The case was remanded for entry of summary judgment in favor of AIG.

On remand, the circuit court entered an order granting summary judgment in favor of AIG on May 31, 1995. Thereafter, AIG, armed with our March 30, 1995 opinion, filed a June 2, 1995 motion seeking rescission of the settlement agreement, essentially asserting that the May 1992 settlement agreement "was premised on a mutual mistake of law." The circuit court, without explanation in its written order, summarily denied the motion on July 13, 1995.

It was at the rescission proceeding that documentation of the 1992 settlement was entered in the record of Civil No. 89-0621, which was later transmitted to this court when AIG attempted to appeal the denial of the rescission motion.[4] Judgment as to all claims and parties was entered on January 25, 1996, and this timely appeal followed.

## II. *STANDARD OF REVIEW*

■ Rescission and cancellation are equitable remedies. *Almeida v. Almeida,* 4 Haw.

---

4. As previously indicated, we dismissed the appeal in *Vicente II* for lack of appellate jurisdiction because the judgment entered in the underlying case on September 5, 1995 "[did] not resolve defendant Vicente's cross-claim, which the parties [had] stipulated to dismiss."

App. 513, 522–23, 669 P.2d 174, 181 (1983). "The relief granted by a court [in] equity is discretionary and will not be overturned on review unless the [circuit] court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant." *K.M. Young & Assocs., Inc. v. Cieslik*, 4 Haw.App. 657, 670, 675 P.2d 793, 802–03 (1983) (citation omitted), *reconsideration denied*, 5 Haw.App. 683, 753 P.2d 253 (1984).

### III. *DISCUSSION*

**A.** *The Circuit Court Correctly Concluded that AIG Was Not Entitled to Rescind the Settlement Agreement.*

██ AIG argues that the circuit court erred in denying its motion to rescind the settlement agreement it had entered into regarding Vicente's claims because the settlement agreement was premised on a mutual mistake of law. AIG essentially asserts that, because neither party was aware, at the time the parties entered into the settlement agreement, that the circuit court's ruling regarding AIG's duty to defend and indemnify Bateman would be reversed on appeal, the parties were mistaken as to their legal responsibilities regarding the insurance contract, and, therefore, the settlement agreement was voidable. We disagree.

██ *Restatement (Second) of Contracts* [hereinafter, the Restatement] § 152 (1979) sets out the general rule regarding mutual mistake and voidability, and provides:

When Mistake of Both Parties Makes a Contract Voidable

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he [or she] bears the risk of the mistake under the rule stated in § 154.

(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

Restatement, *supra*, § 152 at 385. *Cf. Gossinger v. Association of Apartment Owners of The Regency of Ala Wai*, 73 Haw. 412, 420, 835 P.2d 627, 632 (1992) ("The general rule ... is that, absent fraud, duress, coercion, undue influence, or other acts of overreaching by a releasee (insurer), a release can only be avoided by a releasor (injured party) on the grounds of mutual mistake. *Restatement (Second) of Contracts* § 152 comment f (1981)."). In like fashion, section 153 of the Restatement sets out the general principles of unilateral mistake:

When Mistake of One Party Makes a Contract Voidable

Where a mistake of one party at the time a contract was made as to a basic assumption on which he [or she] made the contract has a material effect on the agreed exchange of performances that is adverse to him [or her], the contract is voidable by him [or her] if he [or she] does not bear the risk of the mistake under the rule stated in § 154, and

(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or

(b) the other party had reason to know of the mistake or his [or her] fault caused the mistake.

Restatement, *supra*, § 153 at 394. *Cf. Gossinger*, 73 Haw. at 423, 835 P.2d at 633 ("[W]e hold that a mistake, whether mutual or unilateral, ... is not a proper basis for rescinding a release when the party seeking rescission has initiated and urged settlement ... and has signed the release knowing that [there is uncertainty as to the veracity of certain material facts]." (Footnote omitted.)).

Section 151 of the Restatement defines "mistake" as "a belief that is not in accord with the facts." Restatement, *supra*, § 151 at 383. Comment b to section 151 provides that:

*Facts include law.* The rules stated in this Chapter do not draw the distinction that is sometimes made between "fact" and "law." They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time.

A party's erroneous belief with respect to the law, as found in statute, regulation, judicial decision, or elsewhere, or with respect to the legal consequences of his [or her] acts, may, therefore, come within these rules.

Restatement, *supra*, § 151 at 384.

Vicente argues, *inter alia*, that AIG is not entitled to rescind the settlement agreement pursuant to sections 152 or 153 because AIG bore the risk under section 154. We agree. By their own terms, the general rules of sections 152 and 153 do not apply where the party seeking relief due to a mistake bears the risk of the mistake under section 154, which provides:

A party bears the risk of a mistake when

(a) the risk is allocated to him [or her] by agreement of the parties, or

(b) he [or she] is aware, at the time the contract is made, that he [or she] has only limited knowledge with respect to the facts to which the mistake relates but treats his [or her] limited knowledge as sufficient, or

(c) the risk is allocated to him [or her] by the court on the ground that it is reasonable in the circumstances to do so.

Restatement, *supra*, § 154 at 402–03.

In the present case, AIG argues that both it and Vicente were mistaken as to AIG's obligation to defend and indemnify Bateman, based on the circuit court's ruling that we later held was erroneous. Vicente retorts that AIG was not mistaken, but was "consciously ignorant" of the state of the law, and thereby bore the risk of mistake pursuant to section 154(b). Comment c to section 154 provides:

*Conscious ignorance.* Even though the mistaken party did not agree to bear the risk, he [or she] may have been aware when he [or she] made the contract that his [or her] knowledge with respect to the facts to which the mistake relates was limited. If he [or she] was not only so aware that his [or her] knowledge was

limited but undertook to perform in the face of that awareness, he [or she] bears the risk of the mistake. It is sometime said in such a situation that, in a sense, there was not mistake but "conscious ignorance."

*Id.* at 404.

In other words, AIG cannot claim that it was mistaken as to the law regarding its duty to defend and indemnify Bateman because it had itself taken steps, in the form of an appeal, to overturn the very order that forms the basis of its "mistake."

As Vicente correctly notes, the settlement agreement drafted by AIG did not provide for: (1) deposit of the settlement into court; (2) return of the funds paid in the event AIG prevails on appeal; (3) a stay of Vicente's claims against Bateman pending the outcome of the appeal; (4) the conditional release of settlement proceeds dependent upon the outcome of AIG's appeal; or (5) preservation of AIG's subrogation rights against Bateman in the event of a reversal. In view of these circumstances, AIG was not mistaken as to the unsettled state of the law, but rather was unprepared for a favorable decision on appeal. Having instituted the appeal, yet entering into a settlement agreement without having protected its interests, AIG cannot now claim it was a victim of a mistake of law.

For the foregoing reasons, we hold that the circuit court did not abuse its discretion in denying AIG's motion to rescind release and settlement agreement, and affirm the judgment of the circuit court.[5]

### B. *Counsel's Conduct*

#### 1. **Mootness of AIG's Appeal in *Vicente I***

It is well-settled that the mootness doctrine encompasses the circumstances that destroy the justiciability of a case previously suitable for determination. A case is moot where the question to be determined

---

5. AIG further argues that the circuit court erroneously granted Vicente's motion for assessment of attorneys' fees and costs pursuant to HRS § 607–14 because it erroneously denied AIG's motion to rescind release and settlement agreement. In her motion, Vicente argued that, be-

cause AIG sought relief in the form of rescission and restitution in this action, the action was in the nature of an action for assumpsit. In view of our holding that the circuit court correctly denied AIG's motion to rescind, we affirm the circuit court's award of attorneys' fees and costs.

is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where events have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

*In Re Application of J.T. Thomas,* 73 Haw. 223, 225–226, 832 P.2d 253, 254 (1992) (internal quotation marks and ellipses omitted) (quoting *Wong v. Board of Regents, University of Hawaii,* 62 Haw. 391, 394, 616 P.2d 201, 203–04 (1980)).

"Judicial tribunals sit only for the determination of real controversies between parties who have a legal interest of at least technical sufficiency in the subject-matters embraced in the records of causes pending in courts." *Castle v. Irwin,* 25 Haw. 786, 792, *reh'g denied,* 25 Haw. 813 (1921). Accordingly,

[t]he duty of [the supreme court], as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. .

*Thomas,* 73 Haw. at 226, 832 P.2d at 255 (internal quotation marks omitted) (quoting *Wong,* 62 Haw. at 394–95, 616 P.2d at 203–204). Thus, "[m]erely abstract or moot questions will not be determined on appeal and feigned or fictitious appeals ought not to be tolerated." *Irwin,* 25 Haw. at 792.

█ The dispute regarding AIG's duty to defend and indemnify Bateman as to Vicente's bodily injury claim against him was completely and effectively settled when AIG paid Vicente bodily injury liability coverage of $35,000 under the AIG policy issued to Corpuz and when Vicente executed the settlement agreement. Thus, throughout the pendency of this appeal, the question of AIG's duty to defend and indemnify Bateman did not rest on existing facts, and the question on appeal was purely abstract. Moreover, the case did not fall within the exception to the mootness doctrine because the insurance contract dispute between AIG and Vicente concerned a question of a private,

not a public, nature; the case did not concern "a challenged governmental action [that] would evade full review because of the passage of time[,] . . . prevent[ing] any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit." *Life of the Land v. Burns,* 59 Haw. 244, 251, 580 P.2d 405, 410 (1978) (citation omitted); *Johnston v. Ing,* 50 Haw. 379, 381, 441 P.2d 138, 140 (1968).

Thus, had the settlement appeared on the record or had counsel for the parties disclosed the settlement to this court, this court likely would have dismissed AIG's appeal as moot.

2. **Conduct of Counsel in Bringing and Defending a Moot Case and Failing to Disclose Facts That Rendered The Case Moot**

a. *HRPC Rule 3.1*

HRPC Rule 3.1, entitled "Meritorious Claims and Contentions," provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law." The Comment to HRPC Rule 3.1 states that "[t]he action is frivolous . . . if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."

In the present case, counsel for AIG and Vicente had no basis for bringing and defending a proceeding in the supreme court on a question that the parties had completely settled. Had the settlement appeared on the record or had it been disclosed on appeal, counsel for AIG and Vicente would have been forced to concede that the conditions for justiciability had been compromised and neither AIG's attorneys nor Vicente's attorneys could have made a good faith argument on the merits of the appeal.

By bringing and defending an appeal on a case that was actually moot, it appears that counsel for AIG and Vicente may have violat-

ed HRCP Rule 3.1 by "wast[ing] the time and limited resources of this court [and] ha[ving] denied availability of the court's resources to deserving litigants[.]" *In re Solerwitz*, 848 F.2d 1573, 1575 (Fed.Cir.1988) (disciplining attorney for filing and maintaining frivolous appeals having no colorable basis in fact or law), *cert. denied* 488 U.S. 1004, 109 S.Ct. 784, 102 L.Ed.2d 775 (1989).

### b. *HRPC Rule 3.3*

■ HRPC Rule 3.3(a)(1), entitled "Candor Toward the Tribunal," provides that "[a] lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal[.]" A related rule, HRPC Rule 8.4(c), entitled "Misconduct," provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]"

The failure to make disclosure of a material fact to a tribunal is the equivalent of affirmative misrepresentation. *See e.g., In re Fee,* 182 Ariz. 597, 898 P.2d 975, 979 (1995) (failure to disclose separate fee agreement to settlement judge to avoid jeopardizing settlement proceeding constituted violation of disciplinary rule prohibiting lawyers from knowingly making false statements of material fact to a tribunal and from engaging in conduct involving dishonesty, deceit, or misrepresentation; "system cannot function as intended if attorneys, sworn officers of the court, can ... mislead judges in the guise of serving their clients"); *Di Sabatino v. State Bar of California,* 27 Cal.3d 159, 162 Cal. Rptr. 458, 606 P.2d 765 (1980) (failure to disclose prior unfavorable bail rulings in proceeding to secure bail reduction constituted violation of disciplinary rule and statute prohibiting lawyers from making false statements of fact to the court; attorney had an affirmative duty to inform the court of ·all relevant facts and circumstances regarding the proceeding brought); *In re Malmin,* 126 Idaho 1024, 895 P.2d 1217, 1220 (1995) (failure to disclose stipulated agreement for increased child support in proceeding to secure default judgment for greater amount of child support constituted violation of disciplinary rule imposing duty of candor toward the tribunal; "lawyer's silence misled the magistrate judge and deprived the magistrate judge of facts necessary to make an informed and fair decision").

■ In the present case, neither AIG's attorneys nor Vicente's attorneys disclosed the fact of the May 1992 settlement to the appellate court. The execution of the settlement was a fact clearly material to the proceeding brought before this court, and counsel for the parties had an affirmative duty to inform this court of the settlement. Their silence clearly misled us into rendering our March 30, 1995 opinion, and their failure to disclose the settlement was tantamount to affirmative misrepresentation. By failing to disclose the settlement to the supreme court, it appears that counsel for AIG and Vicente may have violated HRPC Rules 3.3(a)(1) and 8.4(c) requiring candor and truthfulness toward the tribunal.

### 3. **Referral to Office of Disciplinary Counsel**

■ As previously noted, Canon 3D(2) of the Revised Code of Judicial Conduct provides:

A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Hawai'i Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Hawai'i Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority.

Because counsel have engaged in conduct before this court that may not comport with the HRPC, we are compelled to refer the record of this case to the ODC for its review and appropriate action. *See Bettencourt v. Bettencourt,* 80 Hawai'i 225, 909 P.2d 553 (1995) (referring record to ODC where it appeared appellate counsel engaged in conduct prohibited by the HRPC).

### IV. *CONCLUSION*

For the foregoing reasons, the judgment of the circuit court is affirmed. Furthermore, in connection with the above-described con-

duct of counsel, we refer the records of Supreme Court Nos. 16114, 19274, and 19616, as well as Civil No. 89–0621 to the ODC for its review and appropriate action. We direct the Clerk of the Supreme Court to transmit a certified copy of this opinion to the ODC. We further direct all clerks of the several courts of this state to make available the records of the aforementioned cases for the ODC's review and to provide certified copies, at no cost, of any documents requested by the ODC in connection with its investigation of this matter.