MANUEL M. SILVA *v.* ROBERT HIND, LIMITED, AN HAWAIIAN CORPORATION DOING BUSINESS AS HIND-CLARKE DAIRY, ET AL.

No. 2116.

ARGUED NOVEMBER 21, 1933.          DECIDED JANUARY 5, 1934.

PERRY, C. J., BANKS AND PARSONS, JJ.

937

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity in which the petitioner prays for the cancellation of a written release given by him to ·the respondents and for an injunction to restrain the respondents from using the release as a defense in an action at law instituted by the petitioner against the respondents concurrently with the filing of the bill in equity. The circuit judge entered a decree granting the relief prayed for. The respondents appeal.

The facts as found by the circuit judge are substantially as follows: The petitioner, being at the time a conductor and motorman in the employ of the Honolulu Rapid Transit Company, was, on January 13, 1931, crossing a public highway when proceeding to his daily work with the Rapid Transit Company. While crossing the street he was struck by a motor vehicle operated by an employee of the Hind-Clarke Dairy, one of the respondents, and was injured. He received medical care and attention under the direction of his own physician, Dr. Faus, and on the twenty-sixth day of the same month was informed by the doctor that he was able to return to work. Proceeding to the office of his employer he was advised to go to the office of the representative in Honolulu of the United States Fidelity and Guaranty Company, which was the insurer of the Hind-Clarke Dairy. One Rourke, acting for the representative of the insurer, ascertained from the petitioner the number of days' wages

that he had lost and the rate of his usual compensation and paid him $84.50 which was agreed by him and the petitioner to be the correct mathematical result of the number of days lost multiplied by the rate of wages to which the petitioner was entitled. The petitioner thereupon signed a document releasing the Hind-Clarke Dairy and the insurer "from all claims, demands, damages, actions or causes of action on account of injuries resulting or to result" from the accident of January 13, 1931, "and from all claims or demands whatsoever in law or in equity which I * * * shall or may have by reason of any matter, cause or thing whatsoever prior to the date hereof." At the same time the petitioner signed a receipt for the $84.50 "in full settlement of personal injuries claim" against the dairy "as a result of" the accident. On the following morning the petitioner resumed the performance of his duties as conductor and motorman but at the end of not more than one or two hours of service, in changing the trolley on the street car that he was operating, suffered a wrench in the back which caused him great suffering and within a few minutes thereafter a collapse. He was taken to a hospital and remained there three or four months under the care of his physician. Ever since leaving the hospital he has been incapacitated from labor and the probability seems to be that he will remain incapacitated for the remainder of his life.

On January 9, 1933, this suit in equity was commenced and at the same time the petitioner instituted an action at law against the Hind-Clarke Dairy in which he claims damages based upon the theory that the accident of January 13, 1931, was caused by the negligence of the driver of the dairy's truck.

The main question presented for our consideration is whether, under the circumstances of the case at bar, the release should be cancelled by a court of equity.

In giving his testimony the petitioner claimed that he did not read the paper which he signed, that no explanation of its contents was given to him and that he believed he was signing merely a receipt for the amount of the wages which he had lost. On the other hand there was testimony on behalf of the respondents that both Rourke and a notary who was present clearly explained to the petitioner before he signed that the paper was a release in full of all damages accruing to the petitioner by reason of the accident. The trial judge made no express finding with reference to this conflict of testimony. In view of our conclusion on another phase of the case it may be assumed, for the purposes of this opinion, that the petitioner, in signing the paper, well understood that it purported to be a release in full.

In many instances courts have considered whether similar releases may be cancelled and under what circumstances they may be set aside. At first reading at least, there seems to be considerable confusion in the authorities on this subject. Some of that confusion and apparent conflict disappears, perhaps, on a closer examination into the facts of each particular case so decided. There can be no doubt of the jurdisdiction of courts of equity to cancel contracts which are executed under mutual mistake. This jurisdiction is as well established as is the jurisdiction to cancel contracts secured by fraud. *Nygard* v. *Ry.*, 179 N. W. (Minn.) 642, 643. It is equally clear that equitable relief by cancellation on the ground of mutual mistake is as readily granted in the case of a compromise as in the case of any other contract. *McIsaac* v. *McMurray*, 77 N. H. 466, 472. In cases such as that at bar an important inquiry is whether the mistake relied upon in aid of a cancellation related to a past or a present fact or related purely to a surmise or opinion as to the future development of a known and existing illness or

injury. If the mistake relates clearly to a past or a present fact the remedy of cancellation will be awarded. See, for example, *Simpson* v. *Ry.*, 107 Neb. 779, 782, 783; *Tucker* v. *Ry.*, 120 Kans. 244; *Richardson* v. *Ry.*, 157 Minn. 474, 476; and *Ry.* v. *Wilcox*, 116 Fed. 913, 914, 915.

In the case at bar the essential facts as found by the trial judge,—no contrary findings will be here attempted because conflicting testimony was given by witnesses whom the circuit judge saw and heard and the weight of which he was in a better position to determine—were that on January 26, within two weeks from the time of the accident, the petitioner was in effect told by his physician that he was cured and that there would be no further physical suffering or trouble consequent upon the accident, that the petitioner believed that those were the facts, that the information and opinon of the doctor were communicated to the insurer's representative, Rourke, and that the latter likewise believed in the truth of those facts. A statement by a physician that a patient has fully recovered from an injury received in an accident is a representation concerning an existing fact. *Granger* v. *Ry.*, 215 N. W. (Wis.) 576, 578. There was no issue between the parties as to what the probable course of development of the injuries would be or as to how long the petitioner would suffer or how long he would be incapacitated or as to the degree of his incapacity. He was cured. His sufferings were ended. His ability to work had been definitely restored to him. All that the petitioner and Rourke discussed in their meeting at Rourke's office was the mathematical question of how much wages he had lost during his period of approximately two weeks of incapacity. It is easy to suppose that if the petitioner had not been under that mistake he would not have consented to sign a release of all damages for the mere amount of his wages which he had already lost and it is equally

easy to suppose that if the insurer had not been under the same mistake it would not have refused to pay a higher sum in damages in view of the probability or possibility of more serious results developing from the injury. In his report of the injuries dated January 14, 1931, the doctor said that he found "contusion 4 lumbar vertabrai region, abrasion left knee" and "contusion calf right leg." What afterwards developed was that there had been a serious injury in the sacro-iliac joint, something which an X-ray did not and could not disclose. In other words the mistake which moved the parties was one concerning a past and a present fact, to-wit, the fact that the evil results of the accident were definitely ended and that the parties therefore knew mathematically to what extent the petitioner had been damaged. It was not a mistake in prophecy or opinion or in a belief relative to an uncertain future event. It was not in reality a compromise entered into on account of uncertainty involved as to the future effect of the accident. Under these circumstances we think that the relief prayed for was properly granted.

Another contention of the respondents is that the present suit is barred by laches on the part of the petitioner. The statute of limitations relating to the time within which actions for damages to persons may be brought, section 2645, R. L. 1925, provides that such actions may be instituted at any time within two years after the cause of action accrued. In the present instance the action for damages was brought on January 9, 1933, within the two-year statutory period. The plaintiff had a legal right to commence the action at the time when he did do so. The suit in equity was purely incidental to the prosecution of the action at law. There would be no purpose in asking to have the release cancelled except to prevent its being used as a defense in the action at law. There was

no necessity to bring proceedings to set aside the release until the action at law was brought or perhaps even until there was a threat in the action at law to use the release as a defense. Under these circumstances the defense of laches cannot be sustained.

It is further contended on behalf of the respondents that the decree appealed from cannot be affirmed because of the so-called rule of courts of equity that when an answer is sworn to the testimony of the petitioner alone is not sufficient to sustain a grant of the relief prayed for. However that may be, the fact is that in the case at bar the testimony of the petitioner was corroborated in all essential points by other testimony and by the surrounding circumstances. Dr. Faus testified that on or about January 26 he advised the petitioner that he was able to go back to work. His written report shows, as above quoted, that he found only superficial injuries. Mr. Rourke testified that the petitioner told him on January 26 that he was going to resume his work and that he, Rourke, believed that he was going to resume his work. Of his subsequent effort to resume work and the resulting collapse and probable permanent nature of the injury to the sacro-iliac joint there is ample corroboration by other witnesses. That at the meeting of January 26, in Rourke's office, nothing was discussed between the parties except the number of days lost and the rate of pay and the fact that the plaintiff had incurred one or two incidental bills for treatment, is testified to by Rourke as well as by the petitioner. If the equity rule referred to exists in Hawaii, there was ample compliance with it in the testimony and the surrounding circumstances.

The decree appealed from is affirmed.

*E. J. Botts* (also on the brief) for petitioner.

*N. M. Newmark* (*Robertson & Castle* on the briefs) for respondents.