**ROBERT HIND, LIMITED, et al. v. SILVA.**
No. 7430.

Circuit Court of Appeals, Ninth Circuit.
Jan. 21, 1935.

H. W. B. Smith and George A. Work, both of San Francisco, Cal., and Robertson & Castle, J. G. Anthony, and N., A. Newmark, all of Honolulu, T. H., for appellants.

E. J. Botts, of Honolulu, T. H., for appellee.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

On January 13, 1931, appellee sustained personal injuries when struck by an automobile truck owned and operated by appellant Robert Hind, Limited. On January 26, 1931, in consideration of the sum of $84.50, appellee signed a release, releasing and discharging appellant "from all claims, demands, damages, actions or causes of action, on account of injuries resulting, or to result," from the accident. Thereafter, on January 10, 1933, appellee filed a bill in the Circuit Court of the First Judicial Circuit, Territory of Hawaii, for cancellation of the release, alleging that at the time of the execution of the release the parties thereto "believed petitioner's [appellee's] injuries as aforesaid, were merely superficial and temporary and that he was recovered and that he would be bothered no further by said injuries; whereas in truth and in fact, said injuries were serious and permanent in their nature." The bill also alleges that appellee intends to file an action at law against appellant for damages arising out of the accident and that appellant intends to use the release as a defense to the action. Accordingly, the bill prayed that appellant be restrained and enjoined from using or pleading the release as a defense in the law action, and that the release be canceled. A decree was entered in accordance with the prayer of the bill. The Supreme Court of the Territory affirmed the decree, and the case is now before us on appeal from the latter court.

Appellee has interposed a motion to dismiss the appeal on the ground that this court is without jurisdiction, because the "value in controversy" is less than $5,000, the amount necessary to confer jurisdiction on this court in civil cases on appeal from the Supreme Court of the Territory of Hawaii. Judicial Code, § 128 (28 USCA § 225). It is contended that the matter here in controversy is $84.50, the amount paid for the release, and that jurisdiction is therefore lacking because "the amount or value in controversy must be money or property with an ascertainable value of $5,-000 or more, actually involved in the particular proceeding." Appellant answers that the matter in controversy is the value to it of the right to use the release as a defense to an action for damages, and that the value of such right exceeds $5,000. The record discloses that appellee has commenced an action against appellant for $25,-000 damages alleged to have resulted from the accident, and there is an affidavit that "the value of the right to maintain said suit exceeds $5,000, exclusive of interest and costs."

It has been held that the value of the object sought to be protected is the matter in controversy which determines jurisdiction. Hunt v. New York Cotton Ex-

change, 205 U. S. 322, 336, 27 S. Ct. 529, 51 L. Ed. 821, citing Mississippi & M. R. Co. v. Ward, 2 Black, 485, 17 L. Ed. 311. "The value of the right sought to be protected * * * constitutes the value in controversy for jurisdictional purposes." Hayward & Clark v. McDonald (C. C. A.) 192 F. 890, 892, citing Louisville & N. R. Co. v. Smith (C. C. A.) 128 F. 1. See, also, Whitman v. Hubbell (C. C.) 30 F. 81; Sharon v. Terry (C. C.) 36 F. 337, 348, 1 L. R. A. 572; McKee v. Chautauqua Assembly (C. C.) 124 F. 808, 811; Cyclopedia of Federal Procedure, Vol. 1, § 62. In Foster on Federal Practice (6th Ed.) vol. 1, § 13, the rule concerning jurisdiction in a controversy involving the issuance of an injunction is thus stated:

"In a suit for an injunction, the value of the matter in dispute is that of the object of the bill, namely, the value, to the plaintiff, of the right for which he prays protection, or the value, to the defendant, of the acts of which the plaintiff prays prevention."

Clearly, the right of appellant to use the release as a complete defense to an action for $25,000 damages exceeds $5,000.

The appellee relies upon decisions holding that the probative effect and value of the decree in other litigation is not the test of the amount in controversy, such as Elgin v. Marshall, 106 U. S. 578, 1 S. Ct. 484, 27 L. Ed. 249, New England Mortgage Security Co. v. Gay, 145 U. S. 123, 12 S. Ct. 815, 36 L. Ed. 646, and Elliott v. Empire Natural Gas Co. (C. C. A. 8) 4 F.(2d) 493, and cases cited. These decisions have no application to the situation in the case at bar, where the entire controversy might be and usually is settled in one action. It is only because of the rule separating legal and equitable actions in Hawaii that two actions are required to establish the right of the appellee to recover damages.

The motion to dismiss will be denied.

Before considering the merits of the case, it is necessary to state the facts more fully. On January 13, 1931, appellee was struck and injured by an automobile truck owned by appellant and operated by one of its employees. At the time, appellee was crossing a public highway en route to his daily work with the Honolulu Rapid Transit Company, where he was employed as a conductor and motorman. He received medical care and attention for his injuries under the direction of his own physician, Dr. Faus, being treated for painful injuries to his back and spine. Dr. Faus testified that at the time of the accident appellee was "complaining bitterly of pain in his back. There was evidence of a bruise over the right sacro-iliac region. There were other minor abrasions on his legs. Other than that I could find no serious injury of import. I recognized it as a sacro-iliac strain and strapped him up." Two weeks later, on January 26, he was informed by the doctor that he was able to return to work, which he did on January 29. The doctor explained that when he told appellee he could return to work, he believed he "would have no trouble as he seemed all right, felt all right and had no complaint"; that from his observation he thought appellee had accomplished a recovery; and that he did not anticipate any serious aftermath.

On the same day that he received his doctor's permission to return to work, appellee visited a Mr. Rourke, representative of appellant's insurance carrier, and executed the release in question, releasing appellant and the insurer "from all claims, demands, damages, actions or causes of action on account of injuries resulting or to result" from the accident of January 13, "and from all claims or demands whatsoever in law or in equity which I * * * shall or may have by reason of any matter, cause or thing whatsoever prior to the date hereof."

The release was executed in consideration of $84.50, representing wages for the time lost from work by appellee. Appellee testified that when he executed the release, "I thought my condition was not serious; I thought it was all right, what the doctor said." Rourke testified that when appellee visited him on January 26, 1931, he had Dr. Faus' medical report of January 14 in his possession, containing, among other things, the following: "Q. State whether any permanent injury or deformity will result, and if so, to what extent will it affect the patient's present occupation? A. None." Rourke also testified that he and appellee discussed the accident and circumstances; that appellee said "all he was interested in was in receiving his loss of time and his doctor's bill"; and that he prepared the release and read and explained it to appellee.

On January 31, 1931, three days after returning to work, appellee suffered a wrenched back while changing a trolley on the street car he was operating. It was

necessary to remove him to a hospital for treatment, where he remained for three or four months under the care of his physician. Dr. Faus described this injury as "a recurrence of the original back injury [suffered January 13]," and testified that, "he may suffer pain in his lower back the rest of his life, you can't tell. If that joint should firmly unite, either naturally or by operative procedure, he might have relief."

The trial court held, and the Supreme Court of the Territory affirmed the conclusion, that there was a *mutual mistake* as to whether or not the appellee had in fact completely recovered.

Appellant insists that the evidence shows there was no mistake as to the facts of the injury, that is, as to what injury was suffered, and argues "that the only situation that justifies cancellation of a release on the ground of mutual mistake of fact is where there was an unknown injury that was not taken into consideration at the time of the settlement." The only mistake in this case, continues appellant, "was as to the seriousness, or severity, of the injury," and, it is argued, "such a mistake is a mistake of opinion or prophecy which does not justify cancellation of a release."

■■ In our opinion, the release was executed under a mutual mistake as to a present and existing fact, which, it is uniformly held, justifies the cancellation of a release. See statement of rule in 53 C. J., § 29, pp. 1211, 1212, and notes in 48 A. L. R. 1462, and L. R. A. 1916B, 776. The rule was correctly stated and applied by the Supreme Court of the Territory. We quote with approval from the opinion of that court as follows:

"In the case at bar the essential facts as found by the trial judge * * * were that on January 26, within two weeks from the time of the accident, the petitioner was in effect told by his physician that he was cured and that there would be no further physical suffering or trouble consequent upon the accident, that the petitioner believed that those were the facts, that the information and opinion of the doctor were communicated to the insurer's representative, Rourke, and that the latter likewise believed in the truth of those facts. A statement by a physician that a patient has fully recovered from an injury received in an accident is a representation concerning an existing fact. Granger v. Ry. [194 Wis. 51] 2´5 N. W. 576, 578. There was no issue between the parties as to what the probable course of development of the injuries would be or as to how long the petitioner would suffer or how long he would be incapacitated or as to the degree of his incapacity. He was cured. His sufferings were ended. His ability to work had been definitely restored to him. All that the petitioner and Rourke discussed in their meeting at Rourke's office was the mathematical question of how much wages he had lost during his period of approximately two weeks of incapacity. * * * In other words the mistake which moved the parties was one concerning a past and a present fact, to-wit, the fact that the evil results of the accident were definitely ended and that the parties therefore knew mathematically to what extent the petitioner had been damaged. It was not a mistake in prophecy or opinion or in a belief relative to an uncertain future event. It was not in reality a compromise entered into on account of uncertainty involved as to the future effect of the accident. Under these circumstances we think that the relief prayed for was properly granted."

■ This suit was not instituted until nearly two years after the accident, and appellant contends therefore that appellee's right to rescind the release is barred by laches. It is fundamental that "a right to rescind must be exercised promptly on discovery of the facts from which it arises, the requisite diligence being governed by the circumstances of the particular case." 13 C. J., § 670, pp. 615, 616. In Cyclopedia of Federal Procedure, Vol. 7, § 3526, pp. 357, 358, the rule is stated as follows:

"One seeking cancellation or rescission on the ground of fraud or mistake must, on the discovery of the facts, at once announce his purpose and adhere to it; for if he remains silent and continues to treat the property as his own, or the contract as valid, his right of rescission is gone. He cannot play fast and loose, or speculate on future chances, but if he does nothing to recognize the contract as a binding obligation, and files his bill within a reasonable time, it is sufficient. Delay while a fraud or mistake is undiscovered is not laches, although if long, and especially if continued after knowledge, should be explained excusably, and it becomes laches where, without adequate excuse, it is protracted beyond the period fixed by the statute of limitations."

See, also, Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798; Shappirio v. Gold-

berg, 192 U. S. 232, 242, 24 S. Ct. 259, 48 L. Ed. 419.

However, the defense of laches was not pleaded by appellant, and the evidence does not disclose when appellee first discovered the mistake, that is, that the permanent injury from which he now claims to suffer is the result of the first injury for which he gave the release in question.

Moreover, it is not shown that the delay in bringing the suit has worked any prejudice or disadvantage to appellant, and it is well settled that "mere delay in asserting a right does not ipso facto bar its enforcement in equity, by the great weight of authority, unless the case is barred by the statute of limitations." 21 C. J., § 219, pp. 221–223; Pomeroy's Equity Jurisprudence (4th Ed.) Vol. 4, § 1442, p. 3417; 10 R. C. L., § 143, p. 396; Cyclopedia of Federal Proc., Vol. 3, §§ 676, 679; 10 California Jurisprudence, pp. 530, 531.

The trial court and the Supreme Court of the Territory held that the right to rescind was not barred. "The question of laches is addressed to the sound discretion of the chancellor, and his decision will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion." 21 C. J., § 217, p. 217. Under the circumstances of this case, we are not disposed to overturn the finding of fact of the lower courts that the suit was not barred by laches.

However, we are not in accord with the Supreme Court of the Territory in holding that a suit to rescind a release for personal injuries, brought within the period of limitations governing an action at law for damages, is timely brought. This doctrine was announced by the Court of Civil Appeals of Texas in Galveston, H. & S. A. R. Co. v. Cade, 93 S. W. 124, but was repudiated on appeal of the case to the Supreme Court of that state, as follows:

"The honorable Court of Civil Appeals held that the right to repudiate the settlement made in this case by the plaintiff below with the railroad company was not lost by the delay which had occurred, and that delay to signify a repudiation of that settlement for any period of time short of the time prescribed for limitation of the action would not defeat the right to set the settlement aside. We do not indorse the proposition thus stated; but, the reasonableness of the delay being one of fact, this court cannot pass upon it, for which reason we refuse the application [for a writ of error]." Galveston, H. & S. A. R. Co. v. Cade, 100 Tex. 37, 94 S. W. 219.

It is also contended that "the insufficient tender of appellee prior to suit, and the lack of an averment in the bill of willingness to make a proper tender, is a bar to the maintenance of this suit." The claim of insufficient tender is based (1) on a discrepancy of 50 cents between the amount tendered ($84, with interest) and the amount paid for the release ($84.50), and (2) failure to include in the tender the sum of $15 paid to the doctor who treated appellee's injuries. It appears that tender of a sufficient amount was made in open court, and was refused. So far as the record shows, no objection was made at any time, either before the suit was filed or at the trial, to the sufficiency of the amount tendered. The right to object to the amount of the tender was therefore waived. 62 C. J., p. 663, § 13; and see concurring opinion in United States Fidelity & Guaranty Co. v. Leong Dung Dye (C. C. A. 9) 52 F.(2d) 567, at page 579.

Appellant also contends that "the failure of appellee to plead or prove that he would not have executed the release had he known of the alleged mistake, precludes the entry of a decree in his favor." No demurrer or other objection to the bill on that ground was interposed, and apparently the question was raised for the first time on appeal to the Supreme Court of the Territory. When the sufficiency of a pleading is questioned for the first time on appeal, the objection is regarded with disfavor. 21 R. C. L., § 156, p. 614. Defects not affecting the vitality of the pleading or going to the question of jurisdiction of subject-matter are waived unless brought to the attention of the trial court by demurrer. Id., § 158, p. 617. While it is better practice to allege specifically that plaintiff would not have executed the contract had he known of the mistake, it is clear from the allegations of the bill and from the evidence that appellee would not have executed the release had he known of the mistake.

Affirmed.